THE ALGIERS.[1]

VANAMAN *et al. v.* THE ALGIERS.

VANAMAN *v.* SAME.

(*District Court, E. D. New York.* March 13, 1889.)

COLLISION—SIGNALS.

By article 2 of the international regulations for preventing collisions at sea, a sailing vessel is forbidden to display a flare-up light to an approaching vessel, except when she is being overtaken by such vessel, as provided in article 11.

In Admiralty.

The first above named action was brought against the Algiers to recover for the loss of the schooner Nelly S. Jerrill and her cargo by collision. The second action was brought by a seaman on the schooner to recover for personal injuries to him arising out of the collision.

*Biddle & Ward, Henry D. Edmunds,* and *Curtis Tilton,* for libelants.

*Charles H. Tweed* and *R. D. Benedict,* for the steam-ship.

BENEDICT, J. These actions, which have been tried together, arise out of a collision between the schooner Nelly S. Jerrill and the steamer Algiers, which occurred on December 8, 1887. The schooner, while proceeding up the coast of New Jersey, closehauled on her port tack, and heading N. E. by N., at about 10 o'clock at night off Barnegat, met the steamer Algiers coming down the coast, steering S. by W. ½ W. The schooner held her course. The steamer did the same until near the schooner, when, seeing a flare-up light on her starboard bow, she starboarded hard, but by the time she had swung two and a half points she struck the schooner on the port quarter, about 10 feet from the taffrail, cutting off the stern, and with it the libelant John D. Vanaman, who was asleep in his bunk, and was awakened by finding himself in the water. The schooner claims that she was carrying proper side-lights, and besides was displaying a flare-up light, and that the collision was caused solely by the want of a proper lookout on the steamer. The steamer claims that the schooner, in violation of the law, displayed a flare-up light, by which she misled the steamer.

The question first to be considered is whether the exhibition of a flare-up light by the schooner was a violation of the rules for preventing collisions at sea, as revised by the statute of March 3, 1885. 23 St. at Large, 438. The contention on the part of the schooner is that the rules do not forbid the showing of a flare-up under such circumstances, and the decision in the case of *The Merchant Prince,* L. R. 10 Prob. Div. 139, is cited in support of this contention. By the decision referred to, the language of the British statute, which is identical with the language used

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

in the second article of our act of March 3, 1885, was held not to forbid the exhibition of a flare-up light by a sailing vessel, although not being overtaken by but approaching a steamer upon a course crossing her own. With all my respect for the opinion of the learned justice who in the case of *The Merchant Prince* so construed the British statute, I am of the opinion that our act of March 3, 1885, cannot be so construed. The word "carry" seems to me to have the same meaning in all the rules. It means "carry and show." If the word "carry," in article 2, means "carry as a fixed light," it would follow that the light provided for in article 11 must be carried as a fixed light; for article 11 is specified in article 2, and the light mentioned in article 11 is just as much to be carried as the light mentioned in any other article. The necessary result of such a construction would be to make the statute declare that every vessel, when being overtaken, must be carrying as a fixed light a white light or a flare-up light, which she must show from her stern to the vessel overtaking her. I cannot put such a construction upon the act. As I understand our statute, a sailing vessel is forbidden by article 2 to display a flare-up light to an approaching vessel, except when she is being overtaken by such vessel, as provided for in article 11. Such being the law, the schooner on this occasion, when she displayed a flare-up light to the steamer approaching her from up the coast, was guilty of a violation of the law. Consequently, according to the doctrine laid down by the supreme court in the case of *The Pennsylvania*, 19 Wall. 125, the burden rests upon the schooner to prove not only that her display of a flare-up light was not one of the causes, or that it probably was not one of the causes, of the collision, but that it could not have been one of the causes of the collision. The evidence shows that the flare-up light was seen by those on board the steamer; that it was taken to indicate a vessel going down the coast, when in fact she was going up the coast; that shortly after it was seen, and by reason of it, the steamer's wheel was starboarded, and that she swung off two points and a half to three points before striking the schooner. Inasmuch as the steamer, although under a starboard helm, struck the schooner within 10 feet of her stern, it is clear that there could have been no collision if the steamer had held her course. And the testimony plainly shows that it was in consequence of seeing the flare-up light that the helm was starboarded and the steamer swung two and a half to three points off shore. It seems impossible, therefore, to hold that the flare-up light did not contribute to cause the collision, when, if the steamer had not seen the schooner at all, there would have been no collision, and when it was because the steamer saw the flare-up light that she swung to port and into the schooner. I see no way, therefore, to escape the conclusion that the schooner must be held in fault for having shown a flare-up light when forbidden so to do by the law. As to the steamer the evidence makes it plain that a careful lookout was not maintained. The weather was fine, and the schooner should have been seen sooner than she was. If she had been seen as soon as she might have been, collision could have been avoided. Both vessels are accordingly held in fault. Let such a decree be entered.